IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SONIA SANOGUET-VALENTIN, <u>et al.</u>,

   Plaintiffs,

       v.

MUNICIPAL GOVERNMENT OF MAYAGUEZ, <u>et al.</u>,

   Defendants.

CIVIL NO. 14-1182 (PAD)

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiffs were laid off from their employment with the Head Start Program of the Municipality of Mayaguez. They sued the Municipality and others in their official and personal capacities,[1] alleging to have been dismissed because of their political affiliation and without due process of law, in violation of Federal and Puerto Rico law (Docket No. 1).[2]

Before the court is defendants' "Motion for Summary Judgment and Memorandum of Law in Support of Defendants' Motion for Summary Judgment" (Docket No. 38), which plaintiffs opposed (Docket No. 49). Defendants replied (Docket No. 55). For the reasons explained below, defendants' motion is GRANTED IN PART AND DENIED IN PART.

---

[1] The Mayor, José Guillermo Rodríguez; the Mayor's Special Assistant, Elvira Serrano; the Deputy Mayor, Heriberto Acevedo; the Director of the Mayaguez Head Start Program, Olga López; and the Sub-Director of the Mayaguez Head Start Program, Osvaldo Crespo.

[2] The First and Fourteenth Amendments to the U.S. Constitution; Puerto Rico Law 100, P.R. Laws Ann. tit. 29 § 146; Puerto Rico Law No. 382, P.R. Laws Ann. tit. 29 § 136-138; and Article II, Sections 1, 4, 6 and 7 of the Puerto Rico Constitution.

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 2 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 2

## I.     STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial.  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

## II.    FINDINGS OF FACT[3]

### A. Head Start

Around December 16, 2011, the Mayaguez Head Start Program was informed that it was out of compliance with certain administrative or operational requirements.  See, "Defendants' Statements of Uncontested Material Facts" ("SUMF"), Docket No. 32 at ¶ 1. Hence, the Municipality would have to compete with other organizations to receive Head Start Funds. Id.  The competition resulted in the loss of four centers, five groups of home base, and the extended period

---

[3] In all, the parties submitted a little over 300 statements of fact (including proposed statements of fact, the corresponding opposing statements, and additional statements of facts) and over 400 pages of supporting documents, some of which are irrelevant for purposes of summary judgment.  Even though the court reviewed every statement and supporting material, it only refers to those relevant for purposes of evaluating the propriety of summary judgment.

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 3 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 3

program, with a reduction in registration of approximately 127 children. SUMF at ¶¶ 2-3. Because the program received funds based on those registrations, the reduction affected the Program's funding, resulting in a budgetary loss of approximately $600,000.00. In the end, twenty-two employees, including plaintiffs, were laid off. SUMF at ¶¶ 5 and 6.

### B. Plaintiffs

In 1989, Efraín González Rivera began working in the Mayaguez Head Start Program under a term agreement. SUMF at ¶ 60. It is unclear whether he was reclassified as a transitory employee. In any event, he was eventually appointed to a regular position. SUMF at ¶ 62. On July 15, 2013, he was laid off. SUMF at ¶ 67.[4]

In 1989, Dianne Feliciano began to work as a transitory employee in the Mayaguez Head Start Program. SUMF at ¶¶ 85-86. In December 1991, she signed a Service Contract. SUMF at ¶ 87. In March 1992, she was appointed as a regular employee. SUMF at ¶ 88. In June 2015, she was informed that she would be laid off on July 15, 2013 (Docket No. 32, Exh. 7). She resigned from the job effective June 30, 2013. SUMF at ¶ 105.[5] On September 26, 2013, she wrote a letter to the Mayor asking for employment, without alleging or referring to any previous politically motivated termination. SUMF ¶¶ 110-111.

---

[4] Before that date, López offered González the position of Warehouse Supervisor. He responded that he would think about it. SUMF at ¶¶ 72-73. A letter dated July 18, 2013, was later sent to him by certified mail, reiterating the Warehouse Supervisor's position and requesting a response from him by mail. SUMF ¶ 81. The parties disagree as to what happened next. While González insists that he replied to the letter in writing, of which he has no copy, defendants posit he does not have any evidence that he answered the letter. SUMF at ¶ 82. At the end of the day, this fact is immaterial, for it does not alter the analysis or the conclusion in this case.

[5] Feliciano's qualification does not contest this fact but only explains why the effectiveness of her resignation was June 30, 2013. POS at ¶ 105. Contrary to the allegations of the complaint, she never claimed in her resignation letter that her career position was terminated because of her political affiliation or that the lay-off plan was a pretext to terminate her employment. SUMF at ¶¶ 106-107. In her letter, she also thanked the Municipality for the opportunity to work for the Municipality for almost 24 years. SUMF ¶ 108. Although the proposed statement of uncontested fact includes 1213 as the year in which the letter was written, SUMF at ¶ 110, it is apparent that this is a typographical error. The record confirms that the letter is dated September 26, 2013. See, Docket No. 32, Exh. 23.

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 4 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 4

Finally, in February 1998 Sonia Sanoguet was hired as a transitory employee in the Mayaguez Head Start Program. SUMF at ¶¶ 16-18. In April 1998, she was appointed to a probationary position. SUMF at ¶ 19. In November 1998, she was reclassified to a regular career employment position. SUMF at ¶ 20. On July 15, 2013, she was laid off. SUMF at ¶ 26.

### III.   DISCUSSION

**1. Procedural Due Process**

Plaintiffs allege they were illegally dismissed from their employment without a hearing in violation of due process of law (Docket No. 1 at ¶ 79). The Due Process Clause guarantees public employees with a property interest in continued employment, the right to a pre-termination hearing. Suerio-Vázquez v. Torregrosa De la Rosa, 380 F.Supp.2d 63, 68 (D.P.R. 2005)(citing, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. Arizmendi-Corales v. Rivera, 176 F.Supp.2d 114,119 (D.P.R. 2001). Under Puerto Rico law, a career position is considered a constitutionally protected property interest. Id. (internal citations omitted). That property right is void, however, if the employee acquired the position in violation of the law. Id.

Plaintiffs were dismissed from regular career positions. SUMF at ¶¶ 26 and 67; see also, Exh. 32, Exh. 7. Under the Puerto Rico Autonomous Municipalities Law, regular career employees are those who have entered the system through the recruitment procedure established therein, following available job posting, registration, interview, and a successful probationary period. See, P.R. Laws Ann. tit. 21 §§ 4555-4558. For that reason, those employees are "entitled to permanent status and may only be removed from their positions for just cause after due filing of charges." Id. at § 4554(b).

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 5 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 5

Plaintiffs were allowed to work in the Head Start Program without valid regular career appointments. Their self-serving claim that they responded to a public announcement, applied for, and were interviewed and selected for career positions as Social Services Technicians finds no record support.[6] Insofar as they lack a valid property interest in the position from which they were dismissed, no due process violation occurred. See, Colón-Pérez v. Municipio de Ceiba, 112 D.P.R. 740 (1982) (holding that employee that did not compete with other candidates for a position, did not take any test or never was included in register of eligible, did not acquire permanent career status); Emilio Colón v. Hernández-Torres, 219 F.Supp.2d 196, 201 (D.P.R. 2002)(noting that plaintiffs had no reasonable expectation under state law of retaining employment based on an illegal appointment).

2. **Political Discrimination**[7]

Plaintiffs maintain that their positions were terminated because of their political affiliation (Docket No. 1 at ¶ 76). To make out a *prima facie* case of political discrimination, plaintiff must show that (1) plaintiff and defendant have opposing political affiliations; (2) defendant is aware of plaintiff's affiliation; (3) an adverse employment action occurred; and (4) political affiliation was a substantial or motivating factor for the adverse action. Reyes-Orta v. Puerto Rico Highway and

---

[6] In her deposition, Sanoguet testified that she originally obtained her job after competing with other people, "through call" (Docket No. 64, Exh. A at p. 9). See also, Docket No. 41, Exh. 8, in which the term "through call" was translated by defendants' certified court interpreter as "through a job announcement process." But she now contends that she responded to a public employment announcement, applied for, was interviewed, and was selected for a career position. See, Docket No. 49, "Plaintiffs' Response to Defendants' Statements of Uncontested Material Facts and Plaintiffs' Statement of Uncontested Facts" ("POS") at ¶ 21. Deposition testimony provided in support of her contention does not support what she states as it only relates to when she originally obtained her job. In turn, González was appointed to a regular position whose availability was not posted so that other interested individuals could compete for the job. SUMF at ¶ 62. He denied this fact, claiming that he responded to a public announcement, applied for, was interviewed, and was chosen for a career position. His deposition testimony does not support his contention, referring to the time when he was originally hired for the transitory position. Moreover, at page 7 he admits to defendants' statement that there was no job posting. See, Docket No. 41, Exh. 9 at p. 7.

[7] First amendment claims are independent of due process claims. Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 104 (1st Cir. 1997); Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir.1997).

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 6 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 6

Transp. Authority,---F.3d----, 2016 WL 285742, *4 (1st Cir. 2016); Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 236 (1st Cir. 2012). [8]

All of the individual defendants are affiliated to the Popular Democratic Party ("PDP"). Sanoguet alleges to be associated with the Puerto Rico Independence Party ("PIP") (Docket No. 49 at p. 12). Yet it is uncontested that she and Serrano went to "House of Populars," a site frequented by people affiliated to the PDP; and that everybody understood that she was PPD (SUMF at ¶ 41). The contention that she made it clear to all defendants that her political sympathies were with the PIP (POS at ¶ 41) is unsupported.[9] So she has failed to establish a *prima facie* case of political discrimination.

González is affiliated with the PIP (Docket No. 49 at p. 12). And the evidence he submitted, if credited by the jury, confirms that at least López and Crespo were aware of his political affiliation, and that his lay-off resulted from his lack of cooperation with the PDP during the 2012 elections.[10] Defendants point out that Gonzalez' testimony should be disregarded as false, stating that at the time of the meeting referred to in note 10, he was on sick leave (Docket No. 38 at p. 16). But whether González lied goes to his credibility, a matter beyond the scope of

---

[8] In their opposition to the motion for summary judgment, plaintiffs concede that Deputy Mayor Acevedo was not aware of their political leanings, and that Serrano was not aware of González' and Feliciano's political affiliation (Docket No. 49 at p.12). The corresponding first amendment claims against Acevedo and Serrano must be dismissed on that basis.

[9] In plaintiff's own words "…everybody understood I was part of the popular party because of my mother" (Docket No. 64, Exh. A at p. 31). The fact that she voted for the PIP to honor the memory of her father – who was a member of the PIP- in 2012, even with the broadest of interpretations, cannot be considered as evidence of defendants' knowledge of her "change" of political affiliation in 2012.

[10] See, POS at ¶ 74 (including Gonzalez' testimony that he had conversations with López regarding politics on several occasions – one of them during which López allegedly confronted him over a PIP allusive sticker in his car and another one, after the 2012 elections, where González met with López and Crespo in Crespo's office and was allegedly told by López that the Mayor had a surprise for him and that he would be the first in the list of people to be fired, and Crespo added "that's what happens when you don't follow advice." *Cf. with* SUMF at ¶ 157 (alleging that Crespo knows González as an ex Head Start employee only).

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 7 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 7

summary judgment.[11] Nevertheless, the conclusion does not hold in connection with the Mayor because he had no knowledge of Gonzalez' affiliation to the PIP.

Lastly, although Feliciano is identified with the New Progressive Party ("NPP")(Docket No. 49 at p. 9), the court expresses no opinion as to the sufficiency of her claims against López and Crespo. They did not move for summary judgment as to Feliciano's first amendment claims against them.[12] In contrast, Feliciano's action against the Mayor fails, as she testified during her deposition that he did not discriminate against her.[13]

### 3. Supplemental State Law Claims.

To the extent defendants ask for dismissal of plaintiffs' state claims based on the assumption that the court would dismiss all of the federal claims, their request must be denied. At the same time, the Law 100 claims against the Municipality and defendants in their official capacity must be dismissed. The statute does not apply to municipalities or to municipal officials sued in their official capacities. See, Rodriguez-Sostre v. Municipio de Canovanas, 203 F.Supp.2d 118, 119 (D.P.R. 2002)(so noting).

---

[11] See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-52, 120 S.Ct. 2097, 2110-2011 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

[12] While is true that at page 18 of their motion for summary judgment defendants moved to dismiss plaintiffs' political discrimination claims against "all defendants," there is no discussion as to the merits of those claims with respect to López and Crespo.

[13] When asked what actions the Mayor took to discriminate against her, she responded "Him per se, none" (Docket No. 41, Exh. 13 at p. 124).

Case 3:14-cv-01182-CVR   Document 70   Filed 03/21/16   Page 8 of 8

Sonia Sanoguet-Valentin, *et al.* v. Municipal Government of Mayaguez, *et al.*
Civil No. 14-1182 (PAD)
Opinion and Order
Page 8

## IV.   CONCLUSION

For the reasons stated, defendants' motion for summary judgment at Docket No. 38 is GRANTED IN PART AND DENIED IN PART.  Therefore:

(i)  Plaintiffs' due process claims are DISMISSED;

(ii) Sanoguet's first amendment claims are DISMISSED;

(iii) Gonzalez' and Feliciano' first amendment claims against the Mayor, Acevedo, and Serrano are DISMISSED;

(iv) The Law 100 claims against the Municipality and defendants sued in their official capacity are DISMISSED.

(v) Gonzalez' and Feliciano's political discrimination claims against López and Crespo remain.

**SO ORDERED**.

In San Juan, Puerto Rico, this 21st day of March, 2016.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge